May it please the court, my name is Melissa Winberg and I am from the Buttle Defenders of Idaho appearing on behalf of Mr. Graham. I would like to reserve two minutes for rebuttal but I understand that is my responsibility. The district court in this case incorrectly determined that a reasonable person would feel free to leave after a probation officer's clear command that she not leave the house. This incorrect conclusion then skewed the consent analysis and as a result this court should reverse the denial of the motion to suppress. Could I just ask you a literary question since your time is short? Where does the record show that the officers claimed they had the authority to conduct a search? When she received the call from the probation officer he told her that he was doing a probation check and so they were coming to search the house as part of the terms of this probation. I believe that she understood that and then they never explained to her what the limits of this probation search was. They never explained to her that it would be limited to her son's bedroom that her bedroom would not be part of it. I think that when they told her that they would like to look at her guns she had no way of knowing that wasn't part of the probation search. Well if she said we want to do a probation search she says fine come on in. Are they supposed to define to her the limits of that search or if she says they say can we see your bedroom and she says yes are they supposed to say you don't have to say yes? I don't think necessarily there's a duty to tell her she has obligation to say no that is part of the consent analysis. Where they already are in her house on lawful authority it makes the situation a little bit different. They already have lawful access to her home. You're not contending that she was in custody as a result of a phone call then? Yes I do contend that she was in custody. The probation officer told her. Is there authority saying that a phone call from an officer can result in custody of the person being called? Do you have any legal authority for that? Well the test is whether a reasonable person would understand that they were free to leave. When the probation officer calls her and she says I'm planning to leave my house and the probation officer says you need to stay home I think a reasonable person would understand that they're not free to leave. But the officer didn't say you're a suspect in this case he just said I'm coming to do a probation check. She had no reason to believe that she was in custody or was a suspect of anything. Did she? I don't think she needs to be a suspect in the case in order to be seized. The test is simply whether she was free to leave. That would be part of the analysis however if she was afraid that she was going to be arrested. We have two searches right? That is correct. Let's say just for argument's sake since judges love hypotheticals if we were to conclude and we haven't discussed the case so I can't speak for that. If we were to conclude Ms. Snow was not in custody as a result of the phone call can we still find that the first search was not consensual? Yes because the district court also ignored in addition to finding that she wasn't detained also ignored the coercive effect of the probation search where she would not know the limits of that and would not understand that the search of her bedroom was not part of that. Maybe you can point to me more specifically because I listened to the audio on that and it sounded pretty friendly. It just didn't you know it wasn't your typical guns drawn coercion. It sounded pretty friendly. Right but when you have mere acquiescence to a show of lawful authority you generally won't have a situation where someone is being very resistant and asking what the limits of the search are. They are under the impression that they have no choice as to what the search is and that's what makes the consent non-voluntary. Go ahead. I want to say what's your authority for this? Do you have any case that says that the officer has to be very explicit about the limits of the search? There's no requirement that the officer must be explicit but the Supreme Court has recognized that merely acquiescing to a show of authority is not voluntary consent. And that's if she feels threatened or feels as if she's a suspect. None of those things occurred here. I don't think she needs to feel that she's a suspect. It's simply whether she doesn't understand that she has a choice in the matter. Her consent will be voluntary. The search will happen regardless of what she says. Let's go to the second search. As for the second search, didn't the officer have an independent right to accompany Ms. Snow to the bedroom to collect the firearms based on officer safety issues? Even if the officer had a right based on officer safety and I think that's possible. Because your client was getting, things were sort of starting to escalate at that point and the officers knew there were firearms in the bedroom. Right, although the bedroom was again locked at this point. But Ms. Snow at that point had volunteered to take the guns out of the house. She was apparently concerned about her boyfriend Mr. Graham being arrested and when she was voluntarily saying that she would take the guns out herself then the officer says I need to go with you. I think at that point she is clearly in custody. They're controlling her movements. But she was voluntarily removing the guns? When you're using the word voluntary and we're talking about consent. I think that was probably a poor choice of words, Your Honor. I mean if I were cross-examining you I would seize right on that. I apologize. She was going to the bedroom. However at a certain point Mr. Graham and Ms. Snow were having a conversation about the guns and he's saying I think you need to get them out of the house. And then the police officer says we need to seize them. And another police officer says I'm coming with you to the bedroom. Now did Graham, my understanding of your client, just factually, he objected to the search of his desk? But I didn't see anywhere in the record perhaps a complaint where he objected to the search of the bedroom. He did not object to the search of the bedroom. I think that the audio probably showed he was a bit resistant. He was maybe not fully compliant. But he never explicitly objected to the search of the bedroom. Of course during the second search he's in the process of being arrested when his parents were. But I think that that initial phone call when the probation officer tells Ms. Snow to stay home really does color the entire course of events. I think she feels that she's not free to leave. He's told her to stay home. She knows that he's her son's probation officer but he's not directing this at her son. He's not telling her you need to make sure your son Shad is there. He's the one who's under probation. You need to make sure that Shad is available to talk to me. He's telling her you cannot leave. You need to stay home. And at that point she had plans to go and take care of her animals. She stays home instead. She waits for them to come. She doesn't continue. Even when during the search she brings up that she had planned to leave the house. That's why the bedroom is locked. They don't remind her well you can still leave. You can still go on your way. They simply continue with the search. How long between the phone call and when the officers arrived? That was unclear from the record. I believe that Officer Lopez did not remember. Ms. Snow thought it was several hours. Do you want to reserve the balance of your time? Yes, thank you. Please the Court. Christian Asker on behalf of the United States. Good morning. The District Courts not clearly err in finding that Ms. Snow voluntarily consented to the search of her bedroom on both occasions. Looking at the five factors on her pension, obviously the first one is what the District Court spent considerable time and initially addressed. And that's with whether Ms. Snow was in custody. The factors relevant for determining whether this in-home... Is there any legal authority for a phone call putting someone in custody that would mirror these facts? Not to my knowledge, Your Honor. So it's just a question of using the general test. Right. The totality of the circumstances. I think the District Court did a good job looking at the totality of the circumstances. And in doing so, he noted that of importance is that Ms. Snow was never a suspect. A reasonable person would not believe that she was being a suspect in any crime. Merely she was a parent of a child who was on probation and the probation officer wanted to do a probation search of their home. Suppose she was not a suspect, but there was this heated exchange between Sergeant Holdley and Mr. Graham. And she was present, which might have caused a mother some concern. If that's part of the totality of the circumstances, was there reason to believe that she really felt she couldn't leave at that point? Well, and I think that's why the District Court did a good job in addressing the fact of when that heated argument occurred. That occurred after Ms. Snow had the conversation regarding her volunteering to go remove the guns from the bedroom. It was the heated exchange. Things didn't get ugly until after Ms. Snow had said, well, I guess I'll remove the guns and started walking back there. At that point, the officer, for officer safety concerns, knowing that there are firearms, knowing that the argument is deteriorating in the room, escorts her back there. But it's important that that heated argument didn't happen until after she had already volunteered to go get the guns a second time. Well, just so I can pinpoint what you're saying here, is you're saying that when you evaluate the totality of the circumstances of the first consent, that doesn't go into that? Correct. But the second one? Well, I would argue it doesn't go into the second one either, because that occurred after Ms. Snow had already volunteered to go back to the room to get the guns. All right. Would the officer, once he learned there were guns in there, would he have had an independent right to go get them and remove them? Or does that hinge on her consenting to take them back there? Obviously, if she consented, the issue is done. Whether they would have an independent right, it's problematic, because the bedroom is locked. So, when did Graham object to the search of his office? And the office is not the bedroom, correct? That's correct. The office was a desk in a common area of the trailer. Now, when did that occur relative to the search of the bedroom? The first search of the bedroom had occurred. The officers had gone in. They had questioned about the long guns that were found. They had questioned whether there were any handguns. Both Graham and Snow said there were not. And when they were leaving, as they were walking out, they were almost done with the probation search, but Lopez, the probation officer, began looking in this desk. And that's when Mr. Graham stated, hey, I've been on parole. I've been on probation. You can't search there. So it was in between the first search of the bedroom and the second search of the bedroom. And I think under the totality of the circumstances, you can consider the fact that the issue is she was so, Ms. Graham was so distraught in that she had to acquiesce to every request of the officers. I think it's interesting that Mr. Graham was in that same scenario, and he had absolutely no problem saying, no, you can't search my desk. I know my rights. And so this police-dominated atmosphere was not such that one of the adults there felt completely comfortable in challenging the officers as to the search of the desk. But at the same time, there was no challenge to either of the searches of the bedroom. The mere acquiescence to lawful authority, mere acquiescence I don't think was shown here. But there's a second part to that, and that's to a lawful authority. And so the officers didn't demand entrance into the bedroom. The question was, do you mind if we take a look at the guns in your bedroom? And so my point being is that it's the government's position that Ms. Snow was not merely acquiescing, nor was she submitting to a lawful authority, because it was a question, not a demand. Are there any parts of the district court's opinion that you disagree with from a legal standpoint? No, Your Honor. I don't have any additional questions. There don't appear to be additional questions. Thank you. Thank you. I think it's important to note that during the first search at this point, they've already conducted a probation search. They've searched Chad's bedroom. When the officer comes out and asks Ms. Snow if they can search the bedroom, he's doing it in the context of saying, we found things in your son's bedroom. Can we look at, do you have guns? Can we look at your guns? So there's nothing to indicate this is not a continuation of that So the district court ignored during the second search that the threat to a loved one is a salient factor in the totality of the circumstances. And at the point when she's being accompanied to the bedroom again and the officers are telling her they're going to cease the guns, she knows that Mr. Graham might be arrested if these guns are not out. Also, the Sergeant Holdley's exaggerated display of authority when he's berating Mr. Graham is happening at about the same time as she's opening the door to the bedroom once again. And this is, again, a significant factor in the totality of the circumstances. Unless there are further questions. There don't appear to be any further questions. Thank you both for your argument. This matter will stand submitted.
judges: Hug, Nelson, Callahan